UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>v.<br><br>JOSE LUIS NUNEZ-SOBERANIS,<br><br>         Defendant. | Case No.: 18cr4781-MDD<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND SUPPLEMENTAL MOTION TO DISMISS THE [SECOND] SUPERSEDING INFORMATION [ECF NOS. 47 and 51]** |

Defendant is charged in a Second Superseding Information with violating 8 U.S.C. § 1325(a)(1) which provides, in relevant part, that "[a]ny alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers . . . shall [be guilty of a misdemeanor]. (*See* ECF No. 60).[1] Defendant moves to dismiss the

---

[1] At the time Defendant filed his motion to dismiss, he had been charged with the Superseding Information. (ECF No. 45). After the motion to dismiss and the Government's opposition were filed, Defendant was arraigned on a Second Superseding Information. (ECF No. 60). Because the charging documents charge the same offense, Defendant's motion will be construed as moving to dismiss the Second Superseding Information.

1

information on three grounds: (1) Congress violated the non-delegation doctrine when it enacted the statute; (2) Section 1325(a)(1) is impermissibly vague in violation of the Due Process Clause; and (3) the information fails to allege the required elements of § 1325(a)(1). (ECF Nos. 47, 51, 53)

**A. Non-delegation Doctrine**

Article 1, section 1 of the United States Constitution provides that "all legislative powers herein granted shall be vested in a Congress of the United States." The non-delegation doctrine generally forbids Congress from delegating to another branch of government "powers which are strictly and exclusively legislative." *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (quoting *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 42–43 (1825)). But the Constitution does not "deny[ ] to the Congress the necessary resources of flexibility and practicality [that enable it] to perform its function[s]." *Id.* (quoting *Yakus v. United States*, 321 U.S. 414, 425 (1944)). Congress's authority to confer substantial discretion on executive agencies to implement and enforce the laws is well established. *Mistretta v. United States*, 488 U.S. 361, 373-74 (1989) (collecting cases where delegation was upheld and noting the Supreme Court has struck down only two statutes for impermissible delegation and both occurred in 1935).

Congress generally cannot delegate away the inherently legislative task of determining what conduct should be punished as a crime. *United States v. Kozminski*, 487 U.S. 931, 949 (1988). The Supreme Court has held time and again, however, that "Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Gundy*, 139 S.Ct at 2123. Congress can, therefore, permit an executive-branch official to fill in the details of a legislative scheme as long as Congress "lay[s] down by legislative act an intelligible principle to which the person or body authorized to

[exercise the delegated authority] is directed to conform." *Id.* At 2129 (quoting J. *W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928) (brackets in original)).

**1. Analysis**

Defendant argues that Section 1325(a) violates the nondelegation doctrine because it permits executive branch officials the discretion to determine what constitutes a crime under Section 1325(a). Defendant interprets the statute to permit any "immigration officer[]" to designate the times and locations where entry into the United States is lawful. Defendant argues that this delegation is improper because Congress failed to provide any "intelligible principle" to guide and constrain that exercise of discretion. (ECF No. 47 at 2-9). The Government opposes arguing that Defendant's reading of the doctrine is far too broad because Congress was not required to "spell out" for the Executive Agency how to determine where and when ports of entry are open. (ECF No. 53 at 6).

The Court agrees with the Government's position. Defendant appears to conflate Congress's purpose in creating Section 1325(a) and the practical details of its implementation. Congress determined that there should be a proper location and procedure for an alien to seek admission to the United States. *See* 8 U.S.C. § 1225(a)(3) (requiring all applicants for admission to be inspected by immigration officers). Congress also established penalties for failing to follow those procedures. *See* 8 U.S.C. §§ 1321–1330. Section 1325(a) is one such provision. The details of where and when the ports of entry would be located was left to the executive agency responsible for staffing the facilities.

Defendant attempts to read into the statute a broader delegation than actually occurred by arguing that any individual immigration official can

designate any piece of land as a place for entry. Not so. Congress requires that aliens seeking lawful entrance to the United States do so at a port of entry. *See United States v. Corrales*-Vasquez, 931 F.3d 944, 946 (9th Cir. 2019); *United States v.* Aldana, 878 F.3d 877, 882 (9th Cir. 2017). Ports of entry can only be designated or de-designated by the Secretary of Homeland Security subject to the Administrative Procedures Act. *See* 8 C.F.R. § 100.4(a). Ports of entry also necessarily include facilities, staffed by immigration officials that are set up to accept applications for admission. *Aldana*, 878 F.3d at 882. To interpret Section 1325(a) to permit a border patrol agent to designate a portion of the border fence "on a whim" is in direct conflict with Congress's clear statutory scheme.

In support of his argument, Defendant cites the Supreme Court's decision in *Touby*. *Touby v. United States*, 500 U.S. 160 (1991). At issue there was a statute that allowed the Attorney General to temporarily designate a substance as a Schedule 1 Controlled Substance thereby making possession of that substance illegal. *Id.* at 165. The Supreme Court in *Touby* held that the delegation was permissible, however, because Congress provided the Attorney General factors to consider before designating a new substance. Defendant argues the delegation at issue in Section 1325(a) is similar, but Congress provided no guidance as to where ports of entry should be open and their hours of operation.

The Court disagrees that the issue in *Touby* is similar to Section 1325(a). In *Touby*, the Attorney General had the authority to make the legal possession of a substance illegal. This is a discretionary act that expands the scope of criminal conduct under the statute. Legislative guidance was required. The practical issues of where and when ports of entry are open does not alter the scope of conduct considered criminal under Section 1325(a).

The type of conduct prohibited remains the same regardless of what physical piece of ground a port of entry is on. Setting the location of ports of entry and hours of operation only affects when and where an alien may lawfully comply with Congress's directives. It does not change the scope of conduct that would subject an alien to criminal liability.

The Government cites to the most recent Supreme Court case dealing with the nondelegation doctrine to offer support for its position. In *Gundy*, the Court upheld a delegation to the Attorney General to determine when it would be feasible to require sex offenders convicted prior to the statute's enactment to register. In an analogous delegation as here, Congress determined that the registration requirements applied to pre-Act offenders but left the practical problems of implementation and when pre-Act offenders would be required to register to the Attorney General.

The Court finds the type of delegation under Section 1325(a) to be analogous to the delegation in *Gundy*. Congress determined that entering the United States outside a port of entry was prohibited and properly and practically delegated authority to implement Section 1325(a) to the Executive Branch, the agency that would be responsible for staffing and operating the ports of entry. The Court therefore concludes that the statute challenged by Defendant does not violate the nondelegation doctrine.

Accordingly, Defendant's Motion to Dismiss is DENIED.

**B. Due Process Void for Vagueness Challenge**

Defendant next argues that the Information must be dismissed because Section 1325(a)(1) is impermissibly vague in violation of the Due Process Clause. Defendant's argument is essentially the same as the argument discussed above. Specifically, Defendant contends Section 1325(a)(1) runs afoul of the Constitution because it allows "immigration officers" to decide on

a "whim" and with the uttering of "magic words" what places and times to designate for entry. This, Defendant argues, at least permits arbitrary enforcement and subjects the statute to a facial attack. (ECF No. 47 at 14-16).

A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Second, if it authorizes or even encourages arbitrary and discriminatory enforcement. *Id.* But if "it is clear what the ordinance as a whole prohibits," *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972), speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid "in the vast majority of its intended applications." *Hill*, 530 U.S. at 733 (quoting *United States v. Raines*, 362 U.S. 17, 23 (1960)).

As the Government points out, Defendant is charged with "attempting" to enter the United States at a location other than as designated. (ECF No. 53 at 7). Consequently, the Government argues that how the area was designated is irrelevant to this prosecution. The Court agrees. Defendant contends that even if the statute is not unconstitutionally vague as to him, it is still subject to facial attack because "vagueness permeates the text of the law." (ECF No. 47 at 15). But it is well settled that speculation about possible vagueness in hypothetical situations not before the court will not support a facial attack on a statute when it is surely valid "in the vast majority of its intended applications." *Hill*, 530 U.S. at 733 (quoting *United States v. Raines*, 362 U.S. 17, 23 (1960)).

Defendant's argument that the statute is impermissibly vague because

any "immigration officer" can designate any piece of land to be a port of entry is inconsistent with the overall statutory scheme. Reading Section 1325(a) in a vacuum may lead one to that conclusion. But it is a basic canon of statutory interpretation that a statute must be read in its context and with a view to its place in the overall statutory scheme. *Corrales*-Vazquez, 931 F.3d at 949. Ports of entry are identified by federal regulation. *See* 8 C.F.R. § 235.1 and § 100.4(a). Ports of entry necessarily require facilities where immigration officers can accept applications for admission from aliens. *See Aldana*, 878 F.3d at 882. Moreover, the process to designate a port of entry requires formal action by the Secretary of Homeland Security. *See, e.g.*, Opening of Boquillas Border Crossing and Update to the Class B Port of Entry, 77 Fed. Reg. 76346-01, 2012 WL 6707619 (2012) (providing notice of a proposed rule to create a border crossing in Big Bend National Park).

Given the formal procedures required to designate and de-designate a port of entry, and Congress's determination that a port of entry is the only place an alien may lawfully seek admission, the Court finds that Section 1325(a)(1) is surely valid in the vast majority, if not all, of its intended applications and Defendant's hypothetical argument is insufficient to support a facial attack.

Accordingly, Defendant's Motion to Dismiss is **DENIED**.

**C. Elements of § 1325(a)(1)**

Defendant argues the information must be dismissed because it fails to allege the elements of § 1325(a)(1). (ECF No. 47 at 16-20). Defendant identifies three elements that the Government failed to charge: (1) that Defendant knew he was an alien; (2) that Defendant knew that immigration officials had not designated the place he attempted to enter for entry; and (3) that Defendant had the purpose, i.e., conscious desire to enter the United

7

18CR04781-MDD

States. (*Id.*; ECF No. 51).

At the time Defendant filed his motion to dismiss, he had been charged with the Superseding Information. (ECF No. 45). After the motion to dismiss and the Government's opposition were filed, Defendant was arraigned on a Second Superseding Information. (ECF No. 60). The Second Superseding Information cures two of Defendant's three claimed flaws. Consequently, the Court will consider only whether the Government was required to allege that Defendant "knew he was an alien."

**1. Parties' Contentions.**

Defendant argues that a recent Supreme Court decision requires the Information to be dismissed because the Government failed to allege that he "knew he was an alien" at the time of the alleged offense. *See generally Rehaif v. United States*, 139 S.Ct. 2191 (2019). *Rehaif* involved a prosecution under 18 U.S.C. § 922(g) for possession of a firearm by an "alien . . . unlawfully in the United States." *Id.* at 2194. The Supreme Court held that because only a "knowing violation" of the statute constituted a crime, the Government was required to prove both that the defendant knew he possessed a firearm and that he knew his own status. *Id.*

The Government disagrees arguing that *Rehaif* is inapplicable because it turned on the statutory construction of the firearms statute. The Government also argues the underlying policy concerns at issue in *Rehaif* are markedly different from this case, further making *Rehaif* inapplicable. (ECF No. 54 at 9-13).

**2. Legal Standard**

A charging document must include the "essential facts constituting the offense charged[.]" FED. R. CRIM. P. 7(c)(1). A charging document "that tracks the words of the statute violated is generally sufficient" to allege the

elements of an offense, but "implied necessary elements, not present in the statutory language" must be included. *United States v. Jackson*, 72 F.3d 1370, 1380 (9th Cir. 1995).

Whether a criminal statute that is silent as to *mens rea* requires the Government to prove that the defendant acted knowingly is a question of Congressional intent. *Rehaif*, 139 S. Ct. at 2195. To determine Congress's intent, courts begin with the "longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalize otherwise innocent conduct.'" *Id.* (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994)). The presumption applies even when Congress does not specify any scienter in the statutory text, but "applies with equal or greater force when Congress includes a general scienter provision in the statute itself." *Id.*

### a. *Rehaif*

The defendant in *Rehaif* was charged with violating 18 U.S.C. § 922(g), which bars certain persons, including aliens who are "illegally or unlawfully in the United States," from possessing firearms. A separate provision of Title 18 provides that anyone who "knowingly violates" section 922(g) is subject to fine or imprisonment for up to 10 years. 18 U.S.C. § 924(a)(2).

Read together, sections 922(g) and 924(a)(2) explicitly provide that only a "knowing" violation of the statute will constitute a criminal act. The issue before the Supreme Court was therefore limited to the scope of that knowledge requirement. It was undisputed that the Government must prove that the defendant knew he possessed a firearm. The Court limited its inquiry as to whether the Government must also prove that the defendant knew he was an alien "unlawfully in the United States." *Rehaif*, 139 S. Ct. at

2194.

The Supreme Court held that applying the express scienter requirement to the defendant's status was consistent with the statutory construction of §§ 922(g) and 924(a)(2). *Id.* The Court also found that application of the knowledge requirement to the defendant's status furthered the underlying goal of the Court to "help[ ] separate wrongful from innocent acts." *Id.* at 2197.

The Court explained that, "[a]ssuming compliance with ordinary licensing requirements, the possession of a gun can be entirely innocent." *Id.* It was only the defendant's status as an "alien . . . unlawfully in the United States" that converted his conduct into a criminal act. *Id.* Specifically, the Court found that defendant's status was the "crucial element" that made his conduct unlawful. *Id.* The Court further noted that "[w]ithout knowledge of that status, the defendant may well lack the intent needed to make his behavior wrongful." *Id.*

### 3. Analysis

#### a. Relevant Status

Defendant argues that "just as in *Rehaif*, his status as an alien is what separates lawful from unlawful behavior." (ECF No. 47 at 18). Defendant's argument fails to make an important distinction between the relevant status at issue in *Rehaif*, and his own status. In *Rehaif*, the defendant's relevant status was that he was an alien "unlawfully in the United States." Here, at issue is Defendant's status as an "alien."

Contrary to Defendant's argument, Rehaif's violation of § 922(g) did not turn on his status as an alien. An "alien" is any person not a citizen or national of the United States. 8 U.S.C. § 1101(a)(3). Section 922(g) does not prohibit an alien who is lawfully present from possessing a firearm. *See* 18

U.S.C. § 922(g)(5) ("It shall be unlawful for any person . . . who, being an alien, is illegally or unlawfully in the United States). The Supreme Court in *Rehaif* held that the Government must prove Rehaif knew he fell into the relevant status group that made his conduct unlawful. Knowing whether or not he was an alien would not have put Rehaif on notice that he was violating Section 922(g). The outcome determinative factor was whether or not Rehaif knew he was "unlawfully in the United States."

Section 1325 does not require proof that the defendant was unlawfully in the United States. The Court further notes that Defendant is only charged with attempted unlawful entry. On that basis, the Court concludes that the rationale in *Rehaif* is not directly applicable to a prosecution under § 1325 and does not require the Government to allege or prove that Defendant knew he was an alien.

### b. Defendant's status is not a crucial element that makes his conduct unlawful.

Defendant's argument that *Rehaif* applies to his case fails for a second, but related reason. In *Rehaif*, the Government argued that "Congress does not normally require defendants to know their own status." *Rehaif*, 139 S. Ct. at 2197. The Supreme Court in its decision expressly stated that they "need not decide whether [they] agree or disagree with the Government's interpretation" because in the provision at issue in *Rehaif*, the defendant's status was the "crucial element" separating innocent from wrongful conduct. *Id.*

The Supreme Court noted that in the statutes cited by the Government, the conduct prohibited—misappropriating classified information, seeking to evade detection for certain federal crimes, and facilitating child pornography—would be wrongful irrespective of the defendant's status. *Id.*

That difference "assure[d] [the Court] that the presumption in favor of scienter applie[d] even assuming the Government is right that these other statutes do not require knowledge of status." *Id.*

Defendant argues that it is only his status as an alien that rendered his conduct unlawful. In support, Defendant cites to 19 U.S.C. § 1459 for his proposition that "a U.S. citizen who just enters or attempts to enter the United States at a non-designated time or place has committed no offense." (ECF No. 47 at 18). Specifically, he argues that under the statute a U.S. citizen can enter the United States at a non-designated time or place and will not have committed a crime unless he both intentionally fails to enter at a designated location and intentionally fails to immediately report his arrival. (*Id.*).

The Court disagrees in part with Defendant's analysis of 19 U.S.C. § 1459. Unlike in *Rehaif*, the Court finds Defendant's conduct would be unlawful regardless of his status as an alien. In relevant part, section 1459(a) provides that:

> (a) Individuals . . . arriving in the United States other than by vessel, vehicle, or aircraft **shall**—
> (1) enter the United States only at a border crossing point designated by the Secretary; **and**
> (2) immediately—
>   (A) report the arrival, and
>   (B) present themselves . . . for inspection[.]

(emphasis added). A plain reading of the text makes clear that the provision requires all individuals to: (1) enter the United States at a designated location; and (2) immediately report their arrival. Both are required. Therefore, contrary to Defendant's analysis, a U.S. Citizen who enters the United States at a non-designated location has violated this statute regardless of whether or not they report the arrival.

12

The Court agrees with Defendant to the extent that a U.S. citizen may not be subject to criminal penalties for simply entering at a non-designated location. Only an intentional violation of section 1459(a) may result in criminal penalties. *See* 19 U.S.C. § 1459(g). But the statute provides for both civil and criminal penalties. *See* 19 U.S.C. § 1459(f)-(g). Any individual, citizen or alien, who violates any provision of subsection (a) is subject at least to civil penalties.

In *Rehaif*, the Supreme Court concluded that but for defendant's status, the possession of a firearm could have been "entirely innocent." *Rehaif*, 139 S. Ct. at 2197. The defendant's status was the "crucial element" that made his conduct unlawful. *Id.* Here, however, Defendant's conduct would have violated the law regardless of his alienage. His alleged conduct in attempting to enter the United States at a non-designated location was not "entirely innocent." *See id.* On that basis, the Court further finds that the analysis in *Rehaif* is not applicable.

### c. Policy Considerations

The Supreme Court, in dicta, relied on several policy grounds to support its holding in *Rehaif*. The Court finds that those policy concerns are not present here and do not support applying *Rehaif* to this case.

*Rehaif* primarily turned on the statutory construction of Sections 922(g) and 924(a)(2). *See also United States v. Class*, 930 F.3d 460, 468 (D.C. Cir. 2019). As discussed above, section 924(a)(2) includes an express scienter requirement in the text of the statute. The Supreme Court needed only to decide the scope of the requirement. In contrast, Congress did not incorporate a "knowing" requirement into the text of Section 1325. *Rehaif*, 139 S. Ct. at 2194. There is no evidence that Congress intended to apply a scienter requirement to Defendant's status as an alien.

The Supreme Court also found support for its holding because section 924(a)(2) provides for a particularly "harsh" penalty including up to 10 years in prison. *Id.* at 2197. Congress would not have imposed such a harsh penalty without intending the express knowledge requirement to apply to a defendant's status. In contrast, attempted unlawful entry under section 1325(a) is punishable only as a misdemeanor with a maximum prison term of six months. Moreover, the charge already requires the Government to prove Defendant acted with the specific intent to violate the statute and enter or attempt to enter "free from official restraint." (ECF No. 47 at 16).

The "longstanding presumption" that Congress intends to require a defendant to possess a culpable mental state applies to "each of the statutory elements that criminalize otherwise innocent conduct." *See Rehaif*, 139 S. Ct. at 2195. As discussed above, Defendant's status does not criminalize otherwise innocent conduct. In light of the Court's finding that *Rehaif* is inapplicable, and because none of the Supreme Court's policy concerns are at issue here, the Court declines to read additional knowledge requirements into section 1325(a) absent evidence of Congressional intent. Defendant presents no additional arguments to persuade the Court that a different result is required. For the reasons stated herein, Defendant's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 30, 2019

*Mitchell D. Dembin*

Hon. Mitchell D. Dembin
United States Magistrate Judge

14
18CR04781-MDD