**Pages 1 - 19**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Before The Honorable Mitchell D. Dembin, Magistrate Judge

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
VS. ) NO. 18-CR-04781-MDD-BAS
)
JOSE LUIS SOBERANIS )
NUNEZ-SOBERANIS, )
)
Defendant. )
)

San Diego, California
Thursday, August 29, 2019

**TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING OF PROCEEDINGS**

Liberty Court Player 2:18 p.m. - 2:37 p.m. = 19 minutes

**APPEARANCES:**

For Plaintiff:
ROBERT S. BREWER, JR.
United States Attorney
880 Front Street, Suite 6293
San Diego, California 92101
**BY: ERIC R. OLAH, ESQ.**
**ASSISTANT UNITED STATES ATTORNEY**

For Defendant:
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, California 92101
**BY: ERIC STUDEBAKER FISH, ESQ.**
**ATTORNEY AT LAW**

Court Interpreter: Gabriela Sosa

Transcribed By: James C. Pence-Aviles, RMR, CRR, CSR No. 13059
Official Court Reporter

**Thursday - August 29, 2019** **2:18 p.m.**

**P R O C E E D I N G S**

---000---

**THE CLERK:** Calling Matter No. 1.

Matter No. 1, 18-CR-47 --

(Discussion regarding another case.)

**THE CLERK:** Matter No. 1, 18-CR-4781, USA versus Jose Luis Soberanis-Nunez.

**MR. FISH:** Eric Fish for Mr. Nunez-Soberanis. He's right here.

**THE COURT:** Great. Thank you.

**MR. OLAH:** Good afternoon, Your Honor. Eric Olah on behalf of the United States.

**THE COURT:** Thank you.

**MR. FISH:** So we've got a whole bunch of motions. I don't know what you want to do.

**THE COURT:** Here's what I'm going to do.

**MR. FISH:** Yeah.

**THE COURT:** I have a plan.

**MR. FISH:** Okay.

**THE COURT:** So first, there are -- there are motions that I'm going to -- I'm going to provide you my tentative for all the motions.

**MR. FISH:** Okay.

**THE COURT:** For the motions to dismiss, I am going to

enter a written order ultimately.

**MR. FISH:** Okay.

**THE COURT:** For the nondismissal motions, I'm just going to tell you what my tentative is, and unless something changes, that's likely what the ruling is going to be.

**MR. FISH:** Okay.

**THE COURT:** So first, regarding the -- the nondismissal motions, there's a motion to reconsider the protective order. I'm going to deny that motion. The underlying issue had to do with the 1326 case and how the rules regarding requests for readmission are applied. That has nothing to do with this case.

So I'm denying the motion for reconsideration of the protective order.

**MR. FISH:** Well, I would like to be heard on that if that's --

**THE COURT:** You have a total of ten minutes to be heard. So you will be able to decide what you want to be heard about after I finish --

**MR. FISH:** Okay.

**THE COURT:** -- and choose your best shots because I don't think you've got a good shot with that one, but it's up to you.

There's a motion for a probable cause hearing. That's denied. Rule 5.1(a)(4) eliminates a preliminary hearing when

an information has been filed.

There's motions for discovery. One of them was regarding defendant's 2009 voluntary return. Again, I'm going to -- I'm going to deny that. The period to apply for relief under *Lopez-Venegas* ended December 23rd of 2015.

I think the arrest-site-viewing motion is moot. My understanding is that that has been either done or is agreed to.

**MR. FISH:** Yes. We did that.

**THE COURT:** I previously -- we didn't -- we didn't term -- terminate the motion to continue the motion hearing because there were other motions in that, but I did continue it to today. So that motion was resolved.

There's a motion to suppress statements. As I do, I can continue -- I hold that motion pending evidence that I hear at trial. So I'm not ruling on that motion today. I'll hear -- I'll --

**MR. FISH:** So you're withholding -- okay.

**THE COURT:** Yeah. That one is -- when I hear the evidence, I'll decide it, which will be at trial.

And then I think we get to the motions to -- the various motions to dismiss. I'll tell you, I'm going to deny all of them, and I'm going to let you decide what you want to talk about.

I'll tell you, though, that the only one that I found

intriguing was really the -- the *Rehaif*-based motions, the --

**MR. FISH:** Yes.

**THE COURT:** -- whether or not you have to know that you're an alien to qualify under the statute. My -- my tentative is that *Rehaif* does not apply to this case for a host of reasons. That said, that's the only one that gave me pause.

So my suggestion to you -- but it's up to you -- is to use the time you have to argue the one that intrigued me as opposed to the ones that really didn't get very far. Your call.

**MR. FISH:** Well, I do want to, I guess, focus on a few of them.

First, with the protective order, I don't know if the -- if we would clear the courtroom --

**THE COURT:** No.

**MR. FISH:** Okay.

**THE COURT:** I -- actually, I'm aware of what is in the sealed document.

**MR. FISH:** Okay.

**THE COURT:** I'm not going to --

**MR. FISH:** Okay. That's fine.

**MR. OLAH:** And if I may, Your Honor, I think we can talk about the challenge to the protective order without discussing the contents.

**THE COURT:** I agree. There's no need to -- to talk about the contents of what's in the document. I just find it

not relevant to this proceeding.

**MR. FISH:** Well -- so I want to clarify the timeline here.

So the -- we were initially going to be given this discovery. The prosecutor asked for a protective order. Judge Bashant's courtroom deputy got -- told us to hold off on opposing the protective order; that is, if they granted it, I then preserved our right to oppose the protective order.

We were waiting for additional documents to be disclosed, and then the Government, you know, chose to dismiss the felony case, and now we're back here in misdemeanor court.

I -- I mean -- so in a sense, the protective order was never really ruled on. Judge Bashant made clear that it was granted preliminarily so that we could look at the documents and then decide whether or not we wanted to file an opposition.

So this is not -- I mean, I guess formally you might call it a motion to, you know, reconsider the protective order, but the intent of Judge Bashant was that we would be able to look at the documents first and then litigate the question of whether or not a protective order is merited.

So, you know, the delay in this case is caused by the fact that the prosecutor dismissed the felony and turned it into a misdemeanor.

**THE COURT:** Right, but regardless of whether I'm ruling on it in the first instance or ruling on it as

reconsideration, the question has to do with why this particular document has anything to do with an illegal entry prosecution when the document itself has to do with the standards that an immigration officer will use regarding requests for readmission.

So I don't see the relevance. If it's not relevant, you don't get it.

**MR. FISH:** Well, I mean, Your Honor, the protective order applies to me and the other lawyers on the case until the day we die. I mean, we can't reveal the information in the protective order. I think that grants --

**THE COURT:** Again, what does that have to do with this particular case?

**MR. FISH:** I don't --

**THE COURT:** In some other case, that document may become relevant and in which case there's a whole different argument to be made, but it certainly has no bearing in this case. So if you're arguing on behalf of lawyers in other cases, it's just not relevant.

**MR. FISH:** Well -- so, Your Honor, it is the same case with the same case number. It's -- when we went before --

**THE COURT:** But the issue that it addresses is not at issue any longer. There was no request for readmission.

**MR. FISH:** Well, it's an issue insofar as it's an order that currently binds the attorneys in this case. Like,

it's an order of the Court, and we're asking it to be --

**THE COURT:** Which would allow you to disseminate it freely.

**MR. FISH:** Well, that was the -- we -- this is the very issue that we were about to litigate before the Government changed --

**THE COURT:** Okay. Well, I'm denying the motion.

**MR. FISH:** Okay. Well -- so on the *Rehaif* issue, I do believe it's quite clear that he has -- he does have to know that he doesn't have legal status in the United States in order to be guilty of --

**THE COURT:** So there's a difference -- and I'm happy to engage with you on it because I found this issue interesting, and you'll have a chance to respond.

The *Rehaif* issue is whether -- it's a gun possession case, *Rehaif*, and the question is whether or not the defendant had to know that he or she -- in this -- in that case, he -- was an alien without legal status in the United States.

And the question -- it struck me -- and, again, it's a -- as I said, it was intriguing -- that struck me is that's not what we have here. The question is what made the 922(g) applicable to Mr. Rehaif wasn't that he was an alien. It was that he was without legal status in the United States.

Aliens can't possess weapons in the United States under certain circumstances. So it was not his alienage that made

him subject to prosecution. It was the fact that he was without legal status.

Here, in the context of the 1325, it -- being an alien is not necessary in -- or you don't have to know you're an alien in order to be subject to prosecution.

U.S. citizens are subject to prosecution for crossing at a place other than designated as --

**MR. FISH:** Well, that's under a different --

**THE COURT:** -- are subject to prosecution either civilly or criminally. If a U.S. citizen crosses other than as designated under Title 19, they are subject to a civil fine. It becomes a penalty -- it becomes a criminal case if they also failed to immediately report.

But if -- whether you're a U.S. citizen or not, if you cross other than a place -- other than at a place as designated by Immigration, you are subject to penalties. So the alienage component is -- doesn't -- is not what makes this a crime.

So -- and I appreciate the argument, but that's how I interpret *Rehaif*.

**MR. FISH:** So -- I mean -- so then I guess extrapolating from that, you don't believe that at a trial -- a bench trial in this case, the Government has to prove beyond a reasonable doubt that Mr. Nunez-Soberanis knows that he's an alien?

**THE COURT:** No.

**MR. FISH:** I mean, it's -- it's an element of the offense, and there's a strong --

**THE COURT:** The Government has to prove that he's an alien, not that he knows he's an alien.

**MR. FISH:** Well -- so there is a strong presumption, I think, going all the way back to a case called -- I believe it was *X-Citement Video* -- that absent any other mens rea term in the statute, that "knowledge" is the default mens rea term.

So I do think to the extent that alienage is an element, it's fairly clear that he has to know that he's an alien in order to be found guilty.

**THE COURT:** And I'll -- I'll hear from the Government on that, but my preliminary view is no.

**MR. FISH:** Okay. So then on -- I do want to address just the discovery concerning the Facebook group.

**THE COURT:** Facebook group.

**MR. FISH:** Facebook group.

So I requested discovery concerning whether any of the Border Patrol agents involved in the case were a member of this Facebook group in which various racist and --

**THE COURT:** This is a *Brady/Giglio* question.

**MR. FISH:** Yes. Yes, that's right.

**THE COURT:** Yeah.

And I -- I'll hear from the Government. The Government has its obligation in order to produce all *Brady* and *Giglio*

material. If they fail that obligation, the -- not only is there a serious impact in this case, but it's a serious impact on their careers.

So this isn't an interrogatory where you get to ask the question and get an answer. If that evidence exists, the Government is under an obligation to produce it.

**MR. FISH:** Okay.

**THE COURT:** If it does not, then they're not under any obligation to tell you what they did or, you know, how they determined it.

**MR. OLAH:** If I can clarify the "it" there, I think there's a different "it" in what's being requested and the "it" that Your Honor is thinking of.

**THE COURT:** Okay.

**MR. OLAH:** I believe that "it" in the motion is any -- any activity on Facebook with respect to these groups, including mere membership. That is not what *Brady/Giglio* requires.

**THE COURT:** Well, I agree. And, again, the *Brady/Giglio* determination in the first instance belongs to the Government. I don't see that mere membership on a Facebook group qualifies as -- necessarily as *Brady/Giglio*, and I don't have enough information even to know enough about this to make the determination at all and how it bears on this case.

**MR. FISH:** Well -- so, Your Honor, we did submit in

the briefing a variety of (Inaudible) information about the Facebook group, about the racist messages that were being posted on the Facebook group.

And I do believe mere membership in the Facebook group does give rise to *Brady* information simply because, you know, Border Patrol agents are under an obligation to report any misconduct to higher officials, and their failure to do so, I think, is at least valuable impeachment information.

**MR. OLAH:** Your Honor, if I can short-circuit the discussion and with respect to this issue, our office policy has been to present close calls to the Court. Based on my conversations with the two agents I'll be calling at trial, there will not be an ex parte application for either of the witnesses.

**THE COURT:** So if I'm reading that properly, they're not --

**MR. FISH:** Well, it was very precisely worded, Your Honor. The --

**THE COURT:** Well, I just -- honestly, I don't see it. And, again, I would -- I would take the Government up on its offer. If there's information that I can look at in camera to help that process, I will.

**MR. FISH:** There's --

**THE COURT:** But I don't -- I'm not going to make a blanket ruling that mere membership in a group automatically is

*Brady/Giglio* material without seeing how that has something to do with the issues at stake in this case.

**MR. FISH:** So then I'll move on to the probable cause finding.

So the Fourth Amendment requires that in order for someone's liberty to be restrained, there must be either a probable cause finding or some other -- you know, a grand jury finding of probable cause, so either through a sworn statement or through, you know, a grand jury.

Mr. Nunez-Soberanis is kind of in the unique situation where he is on bond with significant restrictions, including that he can't go to Mexico or leave the State of California, on top of the financial condition and all the other ones with no probable cause finding having been made --

**THE COURT:** Well --

**MR. FISH:** -- whatsoever.

**THE COURT:** Well, time out.

The complaint with which he was charged originally was 1325(a)(2). There was a probable cause determination which properly got him before the Court.

Since then, an information has been filed charging him with 1325(a)(1). We don't go back in time -- because at the time the complaint was filed, 1325(a)(2) was still what it was. We didn't have the Ninth Circuit ruling, and it was perfectly lawful.

Now, since then, we've had an information filed, and under Rule 5, no probable cause determination is necessary where the Government files a misdemeanor information, period. It's under the rules. It's right there. You can read it.

**MR. FISH:** Well -- so, I mean, Rule 5 doesn't -- you know, the Fourth Amendment goes beyond Rule 5; right? I mean, he's currently held with conditions --

**THE COURT:** Yeah. Since there is a federal rule that directly addresses whether you're entitled to a preliminary hearing on a misdemeanor information and it says you are not, that's the end of the inquiry.

**MR. FISH:** Well, we don't necessarily need a preliminary hearing. An alternative --

**THE COURT:** What's the difference between a preliminary hearing and a probable cause hearing?

**MR. FISH:** Let me finish. Sorry.

An alternative remedy would be to allow him to be released without any bond conditions.

**THE COURT:** What does that have to do with whether there's probable cause?

**MR. FISH:** He -- his liberty is currently being restrained without a probable cause finding.

**THE COURT:** Yes, because he's subject to an information in which he's not entitled to a probable cause hearing. You're way off-base on that one. Just trust me.

**MR. FISH:** I mean -- so -- all right.

**THE COURT:** That one's not even close.

**MR. FISH:** Okay. All right. Any other --

**THE COURT:** You had a close one. We've got a good argument about it, and I have to consider it.

**MR. FISH:** Are there any others that you'd like to hear further argument on?

**THE COURT:** No. I -- I'm pretty comfortable, but I don't know if the Government wants to be heard further.

**MR. OLAH:** Yes, Your Honor, and I'll do my best to address the points that were made.

First, there's still no -- with respect to the protective order, there's still no assertion of relevance to the pending charge.

**THE COURT:** I've already -- I've denied that motion.

**MR. OLAH:** Okay. If I can supplement, to the extent it's in our opposition, the protective order calls for the destruction of any and all copies of the document that was produced. I would ask the Court to expedite the 30-day wait period on that and order that the -- those copies be destroyed now.

**MR. FISH:** Oh, I would oppose that. I mean, we do intend to appeal this, and the order specifically says 30 days after the end of the case, which would be at the end of any appeal. So I don't think there's any need to destroy copies at

this point.

**THE COURT:** Yeah. I agree. To the extent the protective order controls, this is still the same case. Even though I've -- I'm force -- I am enforcing the protective order, it -- the case ain't over until it's over.

**MR. OLAH:** I understand, Your Honor.

**THE COURT:** What's the Yogi Bear -- it ain't over till it's over?

(Laughter)

**THE COURT:** So --

**MR. OLAH:** As to *Rehaif*, I concur with Your Honor's analysis.

I'd cite -- or refer to the DC Circuit's recent opinion in *Class*. I think it's two months old at this point. It basically says *Rehaif* is limited to the statutes the Supreme Court was interpreting, which, of course, is consistent with the Court's opinion and the concurrence -- or the -- Alito's dissenting opinion, which talks about this is a statute-specific case.

It's not the watershed case that I think the defense bar is going to end up arguing.

**THE COURT:** Well, we don't know what it is yet. I mean, I agree with the notion that it's a loose case, and I don't know ultimately how the other courts are going to interpret it, which is why I find the -- the question

intriguing.

And I don't know if I'm right, to be honest, and we'll find out, but I -- it's -- it is -- I find it an intriguing issue. I agree that the Supreme Court opened this door.

Now, whether it applies in this case, I think not for the reasons that I've alluded to, and that will be in my order, but it's -- it's not the slam dunk that some of the other issues are.

**MR. OLAH:** I guess with that, I'll submit, Your Honor.

**THE COURT:** All right.

**MR. FISH:** I do have -- I mean, I guess it's kind of a strange request. If, you know, Heaven forbid, we haven't (Inaudible) the bench trial, my understanding is that the appeal goes on --

**THE COURT:** To the District Court.

**MR. FISH:** To the District Court on the wheel.

I don't know if it's possible to send it back to Judge Bashant simply because of, you know, one of the issues in this case having to do with her own ruling.

**THE COURT:** Yeah. I would think that she would decline that. I have no power to do it.

**MR. FISH:** Okay.

**THE COURT:** It will go to the wheel. You can, if -- at that time file -- or try and file a motion of related case and see how it's interpreted, but it's not up to me.

**MR. FISH:** Okay.

**THE COURT:** With that, let's get a trial date, shall we?

**MR. FISH:** Sure.

**THE COURT:** How quickly?

**MR. OLAH:** First available, Your Honor.

**THE COURT:** What have we got?

**THE CLERK:** There should be --

**THE COURT:** Oh.

**THE CLERK:** -- the dates for you on calendar.

**THE COURT:** Oh. There we go.

**MR. OLAH:** The 9/13 date would work. Actually, that's not true. I'm in another 1325 trial that morning. So the 9/16 date would work.

**THE COURT:** So what we have available, then, is September 16th at 1:30, September 23rd at 1:30, September 25th at 1:30.

I limit these cases to four hours, by the way.

**MR. FISH:** All right. I'll ask for September 25th.

**THE COURT:** All right. This matter is set, then, for bench trial before me on Wednesday, September 25th, at 1:30. I'm not sure what courtroom we'll be in. We'll have to -- hopefully here. We'll find out, but you may -- you may have to find me.

And, Mr. Nunez, you'll have to appear at that time, sir.

Do you understand?

**THE DEFENDANT:** Yes.

**THE COURT:** All right. Great.

**MR. FISH:** So remind -- so you said you were issuing written orders on some of these?

**THE COURT:** Yes. I'll be written -- issuing a written order on the motions to dismiss, and that will be coming out promptly.

**MR. FISH:** All right.

**THE COURT:** Not on the other motions, just -- all right. Thank you.

**MR. OLAH:** Thank you, Your Honor.

**MR. FISH:** Thank you.

(Proceedings adjourned at 2:37 p.m.)

**CERTIFICATE OF TRANSCRIBER**

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Southern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

DATE: Thursday, September 12, 2019

/S/ James C. Pence-Aviles

James C. Pence-Aviles, RMR, CRR, CSR No. 13059
U.S. Court Reporter