**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>            v.<br><br>JOSE LUIS NUNEZ-SOBERANIS,<br><br>                              Defendant. | Case No. 18-cr-04781-MDD-BAS<br><br>**ORDER DENYING APPEAL OF MAGISTRATE JUDGE DECISION**<br><br>**[ECF No. 86]** |

Defendant Jose Luis Nunez-Soberanis was convicted after a bench trial of improper entry by an alien in violation of 8 U.S.C. § 1325(a)(1). (ECF Nos. 78, 89.) Following his conviction, Defendant was immediately sentenced to time served. (ECF No. 78.) Defendant now appeals this conviction arguing: (1) Section 1325 violates the non-delegation doctrine and is, therefore, unconstitutional; and (2) the Magistrate Judge found Defendant guilty based on inadmissible hearsay. (ECF No. 93.) The Government responds (ECF No. 94), and Defendant replies (ECF No. 95). For the reasons stated below, the Court **AFFIRMS** the conviction.

**I.     STATEMENT OF FACTS**

Border Patrol Agent Miguel Munoz testified that he has worked for Border

1  Patrol for a little over twenty-two years, all in the same area along the U.S./Mexico
2  border. (ECF No. 89 ("Trial Transcript") 11:7–24.) He is a supervisory Border
3  Patrol Agent and has held that title for ten years. (*Id*.)
4      On October 16, 2019, he responded to information provided by a dispatch
5  radio operator that a seismic intrusion device had been activated. (Trial Transcript
6  13:4–10.) Defense counsel objected, and the Magistrate Judge responded to this
7  testimony as follows:

> Q:          And did you respond to a seismic intrusion device activation that afternoon?
>
> Mr. Fish:   Objection, Your Honor. Hearsay.
>
> The Court:  Overruled.
>
> Mr. Fish:   If I can—they haven't laid a foundation.
>
> The Court:  It's not offered for the truth of the matter. It's why he was in the area.

16  (*Id.* 13:4–10.) A "seismic intrusion device is a sensor which picks up foot traffic"
17  and is usually "planted adjacent to a smuggling trail where we know there's a lot of
18  cross-border activity." (*Id.* 12:8–10.)
19      Agent Munoz described the area to which he was dispatched: it was "on a trail
20  in a rural, mountainous area with a lot of brush" approximately one mile north of the
21  U.S./Mexico border. (Trial Transcript 13:21–14:1.) The terrain has "a lot of
22  boulders" and "is rather rugged and difficult." (*Id.* 14:10–14.) The trail heading
23  north is "difficult to manage, very difficult to navigate." (*Id.* 20:16–19.) It is a trail
24  where Agent Munoz has apprehended numerous aliens heading north crossing the
25  border illegally in the past. (*Id.* 15:20–25.) The nearest Port of Entry is
26  approximately eight miles away. (*Id.* 15:2–9.)
27      When Agent Munoz arrived at the trail, he saw footprints heading north. (Trial
28  Transcript 13:21–14:1.) Following those footprints, in an area of the trail hidden

1  from the highway, Agent Munoz saw three individuals hiding on their stomachs
2  under the brush. (*Id.* 21:13–17, 33:3–5.)  He had to pull the individuals out from
3  underneath the brush or bushes. (*Id.* 25:14–19.)  In response to questioning,
4  Defendant admitted he was a citizen of Mexico with no legal papers to be in the
5  United States. (*Id.* 18:23–19:13.)

6  **II.    LEGAL STANDARD**

7  "A defendant may appeal a magistrate judge's judgment of conviction or
8  sentence to a district judge within 14 days of its entry." Fed. R. Crim. P. 58(g)(2)(B);
9  *see also* 18 U.S.C. § 3402.  "The defendant is not entitled to a trial de novo by a
10 district judge." Fed. R. Crim. P. 58(g)(2)(D).  Rather, the appeal's scope "is the same
11 as in an appeal to the court of appeals from a judgment entered by a district judge."
12 *Id.*

13 **III.   ANALYSIS**

14     **A.    Non-Delegation Doctrine**

15 Section 1325 makes it a crime for a non-citizen to enter or attempt to enter the
16 United States at a time or place "other than as designated by immigration officers."
17 Defense counsel argues this violates the non-delegation doctrine because Congress
18 has delegated to immigration officers the ability to determine the scope of a criminal
19 provision without providing the executive branch official with an intelligible
20 principle to guide the official's discretion.

21 Congress may not delegate to another branch "powers which are strictly and
22 exclusively legislative." *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019).
23 However, Congress "may confer substantial discretion on executive agencies to
24 implement and enforce laws." *Id.*  The Supreme Court has acknowledged "that in
25 our increasingly complex society, replete with ever changing and more technical
26 problems, Congress simply cannot do its job absent an ability to delegate power under
27 broad general directives." *Mistretta v. United States*, 488 U.S. 361, 372 (1989).
28 Thus, "a statutory delegation is constitutional as long as Congress 'lay[s] down by

legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform.'" *Gundy*, 139 S. Ct. at 2123 (quoting *Mistretta*, 488 U.S. at 372).

This Court agrees with *United States v. Gonzalez-Pena*, 445 F. Supp. 3d 1021, 1029–30 (S.D. Cal. 2020), that "Defendant's non-delegation argument is based on the flawed premise that any immigration officer can arbitrarily designate ports of entries." As explained in *Gonzalez-Pena*:

> Congress requires that aliens seeking lawful entrance to the United States do so at a port of entry. *See United States v. Corrales-Vazquez*, 931 F.3d 944, 946 (9th Cir. 2019); *United States v. Aldana*, 878 F.3d 877, 882 (9th Cir. 2017). Ports of entry can only be designated or de-designated by the Secretary of Homeland Security subject to the Administrative Procedures Act. *See* 8 C.F.R. § 100.4(a). Ports of entry also necessarily include facilities, staffed by immigration officials that are set up to accept applications for admission. *Aldana*, 878 F.3d at 882. To interpret Section 1325(a) to permit a border patrol agent to designate a portion of the border fence "on a whim" is in direct conflict with Congress's clear statutory scheme.

*Id.* at 1029–30. Therefore, this Court agrees that Section 1325 making it illegal for an individual to enter the United States other than a place designated by immigration officers does not violate the non-delegation doctrine.

**B.     *Corpus Delicti* Rule**

Defendant argues the only evidence to support Defendant's uncorroborated admission that he had violated Section 1325 was the evidence that a seismic intrusion device had activated, which was or should have been excluded as hearsay.

Under the *corpus delicti* doctrine, "a conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused." *Wong Sun v. United States*, 371 U.S. 471, 488–89 (1963). "The requirement of corroboration arises from the high incidence of false confessions and the resulting need to prevent 'errors in convictions based upon untrue confessions alone.'" *United States v. Lopez-Alvarez*, 970 F.2d 583, 589 (9th Cir. 1992) (quoting *Warszower v. United States*, 312

1  U.S. 342, 347 (1941)).  However, "the prosecution need not introduce independent
2  evidence of every element of the crime," but simply must "introduce evidence
3  'tending to establish the trustworthiness of the statement.'" *Id.* at 591 (quoting *Opper*
4  *v. United States*, 348 U.S. 84 (1984)).

5        At the close of evidence in this case, defense counsel raised the *corpus delicti*
6  issue with the Magistrate Judge.  Admittedly, the Magistrate Judge relied in part on
7  the seismic intrusion device for finding sufficient evidence to overcome the *corpus*
8  *delicti* rule.  (Trial Transcript 57:19–58:8.)  But even without the evidence of the
9  seismic intrusion device, there is sufficient evidence that Defendant's admission that
10 he had illegally entered the United States was not a false admission.  The area was
11 very remote and rugged.  The trail was difficult to navigate.  It was a trail where the
12 agent had apprehended numerous aliens heading north crossing the border illegally
13 in the past.  It was approximately one mile north of the U.S./Mexico border and
14 approximately 8 miles from any Port of Entry.  Agent Munoz saw footprints heading
15 north suggesting that someone had come up the trail from the U.S./Mexico border.
16 When he followed those footprints, he found the Defendant, in an area hidden from
17 the highway, hiding face down in the brush.

18       Given these circumstances, even if the seismic intrusion device activation was
19 not admitted as substantive evidence, there is more than sufficient evidence to
20 conclude that Defendant's admission was trustworthy and that there was evidence to
21 corroborate his admission that he was an alien who had entered the United States
22 illegally.  *See United States v. Garcia-Villegas*, 575 F.3d 949, 951 (9th Cir. 2009)
23 ("A reasonable factfinder could infer from the fact that Garcia climbed two fences
24 and hid in one bush that Garcia was conscious that he had no legal right to enter the
25 United States.  This substantial and independent evidence is sufficient to establish
26 the trustworthiness of Garcia's statements.").
27 //
28 //

1  IV.     **CONCLUSION**
2          For the reasons stated above, Defendant's conviction is **AFFIRMED**.
3          **IT IS SO ORDERED.**
4
5  DATED: September 29, 2020

Hon. Cynthia Bashant
United States District Judge